In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-00471-CV


____________________



IN THE INTEREST OF A.S.B. AND N.R.B. 


 




On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 08-09-08737-CV






MEMORANDUM OPINION


 

 This is an appeal from the entry of a family violence final protective order. See Tex.
Fam. Code Ann. § 85.001(b) (Vernon 2008). In three issues, appellant challenges the legal
and factual sufficiency of the evidence supporting the trial court's order. We affirm as
reformed.

 Appellant's spouse, T.R.B., filed an ex parte application for an emergency protective
order along with her older daughter, A.S.B. In the application, T.R.B. and A.S.B. alleged
that appellant had "engaged in conduct that constitutes family violence and criminal sexual
assault" by sexually assaulting T.R.B.'s minor daughter, N.R.B., and by entering the bedroom
of T.R.B.'s adult daughter, A.S.B., while appellant was nude, frightening A.S.B. Attached
to the application were the affidavits of A.S.B. and T.R.B. The trial court entered an
emergency temporary protective order that prohibited appellant from committing family
violence and communicating with A.S.B., N.R.B., and T.R.B., and that required appellant
to stay at least 1,000 feet away from A.S.B., N.R.B., and T.R.B. The order also scheduled
a hearing to determine whether the order should be made final.

 At the hearing, sixteen-year-old N.R.B. testified that on the evening of September 4,
2008, she arrived home at approximately 11:00 p.m. and "went straight to sleep." N.R.B.
testified as follows:

 I woke up because there was someone in my room and in my bed and their
hand was up my shirt. And they were kissing me and they were touching me
- I was wearing underwear and a T-shirt and no bra. And they were touching
me everywhere and kissing my neck and kissing me on my lips. And I
eventually woke up and realized . . . what was really going on. I wasn't
dreaming it. . . . I turned around and [appellant] was laying next to me with no
clothes on in my bed.


According to N.R.B., appellant touched her breasts and genitals. N.R.B. explained that she
was scared and confused, and she left her bedroom. Appellant eventually walked out of
N.R.B.'s room with his hand covering his private parts. N.R.B. testified that appellant said
"something like: I am sorry, I thought you were your mom. . . . I'm sorry. I don't know how
I got in your room." N.R.B. testified that appellant was coherent and spoke in full sentences. 
N.R.B. went to A.S.B.'s room and told A.S.B. what had happened. At that time, N.R.B.
learned that appellant had also been in A.S.B.'s room. N.R.B. testified that she was
frightened for her own safety, as well as the safety of the rest of her family.

 A.S.B. testified that on the date of the incident, she was residing with appellant,
T.R.B., and N.R.B. A.S.B. explained that after she went to bed that night, she awakened and
saw appellant standing at the foot of her bed, and she was surprised and confused. 
According to A.S.B., appellant told her that he was looking for her mother, and he touched
her leg and said "something about, okay. Go to sleep." A.S.B. testified that she was startled. 
A.S.B. explained that N.R.B. subsequently entered A.S.B.'s bedroom, and that N.R.B. was
"hysterically crying." N.R.B. related to A.S.B. that appellant had gotten in bed with her
while he was nude, and had touched her breasts and genitals and kissed her. A.S.B. also
testified that after she and T.R.B. obtained the emergency protective order, she and T.R.B.
saw appellant following them into A.S.B.'s father's neighborhood, and that appellant had
also called her twice.

 N.R.B. testified that after the incident, appellant sent her a text message, in which he
apologized and again said he had thought N.R.B. was her mother. N.R.B. told her principal,
school counselor, a deputy sheriff, and her mother what had occurred. When asked whether
she was fearful of appellant, N.R.B. testified, "I'm not scared he's going to do something to
me again, it just scares me to repeat what happened in my head." N.R.B. explained that she
wanted appellant to maintain a distance from her, and she did not want him to be a part of
her life. N.R.B. testified, "I'm not afraid [appellant will] do anything to me[,] but I don't
want it to happen to someone else."

 T.R.B. testified that on the night in question, she and appellant had gone to bed at the
same time. T.R.B. testified that appellant had no reason to believe that she would have been
in N.R.B.'s bedroom. According to T.R.B., appellant left the house at 8:00 a.m. the next
morning, but he later returned home and told T.R.B. that he was checking himself into the
hospital because he was struggling with drinking. He did not mention what had occurred
with N.R.B. T.R.B. testified that at approximately noon, a deputy told her what had
happened to N.R.B. T.R.B. testified that the Sunday after appellant had been served with the
emergency protective order on the previous Friday, he left a message on her cell phone. In
addition, T.R.B. testified that appellant followed her after he had been served with the
emergency order, and he also sent numerous text messages to her. T.R.B. explained that she
wanted the court to issue a finding of family violence against appellant and to permanently
enjoin appellant from coming within 1,000 feet of her and her family.

 K.B., the ex-husband of T.R.B. and the father of A.S.B. and N.R.B., testified that
since the incident with appellant, T.R.B., A.S.B., and N.R.B. have been living at his
residence. K.B. testified that he was familiar with appellant's car, and that he had seen
appellant's car pull into the driveway of K.B.'s residence. K.B. also testified that T.R.B. and
A.S.B. had told him that they believed appellant was following them into K.B.'s subdivision. 
At the conclusion of the hearing, appellant took the stand and invoked his Fifth Amendment
privilege. The trial court signed a final protective order, in which it found that appellant had
committed family violence against N.R.B., A.S.B., and T.R.B., and that it was likely that
appellant would commit future family violence against them. Appellant then filed this
appeal.

 In his first issue, appellant argues that the evidence was legally and factually
insufficient to support the trial court's finding that he had committed family violence against
A.S.B. In his second issue, appellant asserts that the evidence was legally and factually
insufficient to support the trial court's finding that he had committed family violence against
T.R.B. Appellant does not challenge the trial court's finding that he committed family
violence against N.R.B. In his third issue, appellant contends the evidence was legally and
factually insufficient to support the trial court's finding that he would likely commit family
violence in the future against A.S.B., T.R.B., and N.R.B. We address appellant's issues
together.

 When a party attacks the legal sufficiency of an adverse finding on an issue on which
he did not have the burden of proof, he must demonstrate that there was no evidence to
support the finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In reviewing
a no evidence issue, we view the evidence in a light most favorable to the finding, crediting
favorable evidence if a reasonable factfinder could do so, and disregarding contrary evidence
unless a reasonable factfinder could not. City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex.
2005). When a party attacks the factual sufficiency of an adverse finding on an issue on
which he did not have the burden of proof, he must demonstrate that there was insufficient
evidence to support the finding. Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766
S.W.2d 264, 275-76 (Tex. App.--Amarillo 1988, writ denied). In reviewing a factual
sufficiency issue, we consider and weigh all of the evidence, and we must uphold the finding
unless the evidence that supports it is so weak as to be clearly wrong or manifestly unjust. 
Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); In re King's Estate, 150 Tex. 662, 244
S.W.2d 660, 661 (1951).

 Section 71.004 defines "family violence" as:

 (1) an act by a member of a family or household against another member
of the family or household that is intended to result in physical harm,
bodily injury, assault, or sexual assault or that is a threat that reasonably
places the member in fear of imminent physical harm, bodily injury,
assault, or sexual assault. . . ;


 (2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G),
by a member of a family or household toward a child of the family or
household[.]


 . . . .

 

Tex. Fam. Code Ann. § 71.004 (Vernon 2008). Section 261.001 defines "abuse," in part,
as "sexual conduct harmful to a child's mental, emotional, or physical welfare,
including . . . indecency with a child under Section 21.11, Penal Code . . .[,]" and
"compelling or encouraging the child to engage in sexual conduct. . . ." Tex. Fam. Code
Ann. § 261.001(1)(E), (G) (Vernon 2008). Section 85.001 of the Family Code provides as
follows, in pertinent part:

 (a) At the close of a hearing on an application for a protective order, the court
shall find whether:


 (1) family violence has occurred; and


 (2) family violence is likely to occur in the future.


 (b) If the court finds that family violence has occurred and that family violence
is likely to occur in the future, the court:


 (1) shall render a protective order as provided by Section 85.022
applying only to a person found to have committed family violence[.]


 . . . .


Tex. Fam. Code Ann. § 85.001(a), (b)(1) (Vernon 2008). Section 85.022(b) of the Family
Code provides that a court may prohibit the person found to have committed family violence
from, among other things, communicating directly in a threatening or harassing manner with
the person protected by an order or a member of the family or household of the protected
person, as well as from going to or near the residence of the protected person or a member
of the family or household of the protected person. Tex. Fam. Code Ann. § 85.022(b)(1),
(2), (3) (Vernon 2008).

 In this case, it is undisputed that T.R.B., A.S.B., N.R.B., and appellant were members
of the same household. See Tex. Fam. Code Ann. § 71.004 (Vernon 2008) (including within
definition of "family violence" a prohibited act by one member of a household against
another member of the household). It is also undisputed that T.R.B. and A.S.B. are members
of N.R.B.'s family. See Tex. Fam. Code Ann. § 71.003 (Vernon 2008). The trial court
heard evidence from N.R.B. that appellant, while nude, entered her bedroom, got into bed
with her, kissed her, and fondled her breasts and genitals. However, the trial court did not
hear evidence of any conduct by appellant that constituted family violence against T.R.B. or
A.S.B. Therefore, viewing the evidence in the light most favorable to the trial court's
finding, we conclude there was not more than a scintilla of evidence that appellant committed
family violence against T.R.B. and A.S.B. See Tex. Fam. Code Ann. § 71.004; City of
Keller, 168 S.W.3d at 813. Accordingly, we sustain the legal sufficiency challenges to the
finding of family violence as to T.R.B. and A.S.B. that appellant raises in issues one and two.

 With respect to issue three, the trial court heard evidence that appellant had violated
the terms of the temporary protective order by contacting A.S.B. and T.R.B., as well as by
coming within 1,000 feet of them. The trial court also heard evidence from N.R.B.
concerning the incident during which appellant had inappropriate sexual contact with her. 
Viewing the evidence in the light most favorable to the court's finding that appellant was
likely to commit family violence against N.R.B. in the future, we conclude that legally
sufficient evidence supported the trial court's finding. See City of Keller, 168 S.W.3d at 807, 
813. In addition, considering all of the evidence, we find that the evidence supporting the
finding as to N.R.B. is not so weak as to be clearly wrong or manifestly unjust. See Ortiz,
917 S.W.2d at 772; In re King's Estate, 244 S.W.2d at 661.

 As previously discussed, section 85.022(b) of the Family Code permits the trial court
to enter a final protective order prohibiting appellant from, among other things,
communicating directly with a member of the immediate family or household of the
protected person, "in a threatening or harassing manner[,]" as well as from going to or near
the residence of a member of the immediate family or household of the protected person. 
 See Tex. Fam. Code Ann. § 85.022(b). Thus, the protective order, prohibiting appellant
from engaging in such conduct as to members of N.R.B.'s family, may be upheld based upon
the trial court's finding that appellant committed family violence against N.R.B. 
Accordingly, we modify the first sentence of section four of the trial court's final protective
order to read as follows: "The Court finds that family violence has been committed by
[appellant] against [N.R.B.], a minor child, and it is likely [appellant] will commit family
violence against N.R.B. in the future." See Tex. R. App. P. 43.3 (requiring appellate courts
to render the judgment the trial court should have rendered unless remand is necessary for
further proceedings or the interests of justice require a remand for another trial). The
remainder of the final protective order, including provisions one through seven of paragraph
four, which prohibit appellant from, among other things, communicating with or coming
within 1,000 feet of N.R.B., A.S.B., and T.R.B., or any member of their immediate family
or household, remain in place. See id.; Tex. Fam. Code Ann. § 85.022(b). We overrule
issue three. As reformed, we affirm the trial court's order.

 AFFIRMED AS REFORMED.


 

 STEVE McKEITHEN

 Chief Justice




Submitted on July 8, 2009

Opinion Delivered August 13, 2009


Before McKeithen, C.J., Gaultney and Kreger, JJ.